# In the United States Court of Federal Claims

No. 18-13750

(Filed: December 15, 2021)

| | |
|---|---|
| **GERALD D. STAHLBERG** *et al.*, ) | Rails-to-trails case; determination of |
| ) | parcel at issue; unity of ownership and |
| Plaintiffs, ) | control |
| ) | |
| **v.** ) | |
| ) | |
| **UNITED STATES,** ) | |
| ) | |
| Defendant. ) | |
| ) | |

J. Robert Sears, Baker, Sterchi, Cowden, & Rice, LLC, St. Louis, Missouri, for plaintiffs.

Brian R. Herman, Trial Attorney, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C., for defendant.  With him on the briefs was Todd Kim, Assistant Attorney General, Environment & Natural Resources Division, United States Department of Justice, Washington, D.C.

## OPINION AND ORDER

LETTOW, Senior Judge.

In this rails-to-trails takings case, pending before the court are the parties' cross-motions for partial summary judgment on the issue of unity of ownership.  *See* Pls.' Mot. for Summ. J. ("Pls.' Mot."), ECF No. 6; Def.'s Cross-Mot. for Summ. J. ("Def.'s Cross-Mot."), ECF No. 7. The plaintiffs, WSPGB Mall, LLC, WSPGB Land, LLC, and WSPGB Land II, LLC, have alleged that their respective parcels of property in Kalispell, Montana were both taken and diminished in value by the government when the Federal Surface Transportation Board issued a notice of interim use for the abandoned railroad line that runs through or along the properties. *See* Second Am. Compl., *Herron Development et al., v. United States*, No. 18-1375, ECF No. 13.[1]  Plaintiffs now seek partial summary judgment to establish that the six properties owned by the WSPGB entities individually should be treated as one parcel for appraisal purposes.  Pls.'

---

[1] Originally, these plaintiffs were part of a larger case, *Herron Development et al., v. United States*, No. 18-1375.  Four of the plaintiff landowners in that case were able to reach a tentative settlement agreement with the government.  *See* Order of July 13, 2021, ECF No. 1. Plaintiffs were unable to reach a settlement at that time and moved to be severed from that case, *see* Pls.' Mot. to Sever, No. 18-1375, ECF No. 43.  The court granted that motion, and the severed claims were reorganized into this action.  *See* Order of July 13, 2021.

Mot. at 7-8.[2]  Specifically, plaintiffs argue that despite being deeded to separate legal entities, the parcels should be treated as one unit for appraisal because their beneficial ownership is identical and they are controlled by owners who had the intent to treat the properties as one.  *Id.*  The government opposes this motion and cross-moves for summary judgment on this issue, arguing that the properties should be treated separately for the purposes of appraisal because the three WSPGB entities are legally distinct.  Def.'s Cross-Mot. at 19.  The parties have completed briefing.  *See* Pls.' Resp. & Reply, ECF No. 9; Def.'s Reply, ECF No. 10. The court held a hearing on November 30, 2021, and the motions are ready for disposition.

For the reasons stated below, the court GRANTS plaintiffs' motion for partial summary judgment and DENIES defendant's cross-motion for partial summary judgment on the ground that the properties do satisfy the unity of ownership principle because the properties have the same owners.

## BACKGROUND[3]

The BNSF Railway Company formerly owned an easement that extended over approximately 2.7 miles of railroad line in Kalispell, Montana.  Def.'s Cross-Mot. at 1.  The railroad corridor at issue crosses through downtown Kalispell.  *See id.*, Ex. 1, ECF No. 7-1. Specifically, the corridor passes through the Kalispell Center Mall, which is owned by plaintiff WSPGB Mall, LLC.  *Id.* at 2.  Surrounding the mall property are five other properties at issue; four of these properties are owned by plaintiff WSPGB Land, LLC, and the fifth property is owned by plaintiff WSPGB Land II, LLC.  Pls.' Mot. at 3; Def.'s Cross-Mot. at 3-4.[4]  The parcels are shown in the image below:

---

[2] The parties agree that Gerald and Hattie Stahlberg, the other plaintiffs in this case, are not affected by or involved with these motions.  *See* Hr'g Tr. 22:14-17; 33:6-10 (November 30, 2021).

The date will be omitted from future citations to the transcript of the hearing held on November 30, 2021.

[3] The following recitations do not constitute findings of fact by the court.  Instead, the recited factual elements are taken from the relevant complaint and the parties' briefs and attached appendices.

[4] The parcels are labeled numerically by Flathead County, where Kalispell is situated. The mall property is parcel 0974450. WSPGB Land owns parcels 0740851, 0230450, 0230500, and 0230550. WSPGB Land II owns parcel 0517903.  *See* Pls.' Mot. at 2-3.



Pls.' Mot. at 2. The railroad corridor is fully contained within the mall property and only abuts (but does not cross over) the other properties. Def.'s Cross-Mot. at 2; Hr'g Tr. 21:3-23.

WSPGB Mall, LLC is a manager-managed Utah limited liability company that was formed in January 2013. Def.'s Cross-Mot., Ex. 3 at 1-3, ECF No. 7-3. Its purpose is "[t]o purchase, own manage, lease and operate Kalispell Center Mall." Pls.' Mot., Ex. 3 at 1, ECF No. 6-3. WSPGB Land, LLC was also formed in January 2013 and likewise is a manager-managed Utah limited lability company; its purpose is "[t]o purchase, own, manage, and operate the real property abutting the Kalispell Center Mall." *Id.*, Ex. 4 at 1, ECF No. 6-4. WSPGB Land II, LLC was formed in December 2015, and it too is a manager-managed Utah limited liability company. Def.'s Cross-Mot, Ex. 7, ECF No. 7-7. Each of these LLCs have two identical members: WSP Kalispell, LLC and Kalispell Center, LLC. Pls.' Mot. at 3; Def.'s Cross-Mot. at 3. WSP Kalispell, LLC is the 90% owner of each of the WSPGB entities, and Kalispell Center, LLC has a 10% percent ownership in each. Pls.' Mot. at 3; *see also* Hr'g Tr. 20:15-18. The voting percentage is mirrored with WSP Kalispell, LLC having 90% of the voting rights and Kalispell Center, LLC having 10% of the voting rights. *Id.*, Ex. 3 at 2; Ex. 4 at 2. Similarly, all of the WSPGB entities are managed by Woodbury Strategic Partners Fund, LP. Pls.' Mot. at 3; Def.'s Cross-Mot. at 3. Plaintiffs' plan was that these properties would be operated as one commercial property after the railroad easement expired. *See* Pls.' Mot., Exs. 5, 6, 7, ECF Nos. 6-5, 6, 7.

BNSF filed an exemption petition with the Surface Transportation Board for abandonment of the easement on the April 26, 2017. Def.'s Cross-Mot. at 1. The City of Kalispell requested a notice of interim trail use for a portion of the rail line pursuant to Section 8(d) of the National Trails System Act. *Id.* at 2; *NITU Request, BNSF Railway Co. Abandonment Exemption in Flathead Cty., Mont.*, Docket No. AB-6 (Sub. No. 495X) (STB May 23, 2017). On August 14, 2017, the board granted the City's request and issued a decision and

notice of interim trail use. *Decision and Notice of Interim Trail Use or Abandonment*, *BNSF Railway Co. Abandonment Exemption in Flathead Cty., Mont.*, Docket No. AB-6 (Sub No. 495X) (STB Aug. 14, 2017). Plaintiffs filed suit on September 10, 2018, alleging that the interim trail use agreement constituted a taking of the properties that otherwise would have become unencumbered upon the expiration of the railroad easement. Second Am. Compl. ¶¶ 10-12, 16, No. 18-1375. These plaintiffs were severed from the *Herron Development* case on July 13, 2021, s*ee* Order of July 13, 2021, and redocketed into this case styled *Stahlberg et al. v. United States*.

The parties retained separate appraisers to value the properties. Def.'s Cross-Mot. at 4. The properties were appraised by plaintiffs' appraiser both with and without the easement placed on the properties. Pls.' Resp. and Reply, Ex. 2 ¶ 8, ECF No. 8-2. The parties disagree over whether both appraisers came to the conclusion that the parcels were separate and should be evaluated separately. *Compare* Def.'s Cross-Mot. at 4 *with* Pls.' Resp. and Reply at 8-9. Plaintiffs' motion for partial summary judgment argues that the properties should be appraised as one parcel despite their being titled separately by differently named entities. Specifically, plaintiffs contend that the unity of ownership element is satisfied and that the properties should be appraised as one for just compensation purposes. They aver that the properties were intended to be used as one joint property and that looking past the corporate structures, the properties are under identical beneficial ownership and legal control. Pls.' Mot. at 3, 7. The government opposes this motion and cross-moves for summary judgment on the issue, urging the court to find that the lack of unified title and the separate legal existence of the WSPGB entities mandates that the parcels be valued separately. Def.'s Cross-Mot. at 19.

## STANDARDS FOR DECISION

### A.    Summary Judgment

A grant of summary judgment is appropriate when the pleadings, affidavits, and evidentiary materials filed in a case demonstrate that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Rule 56(a) of the Rules of the Court of Federal Claims ("RCFC"). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if it might "return a verdict for the nonmoving party." *Id.* If "the record taken as a whole [cannot] lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial,'" and summary judgment is appropriate. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting *First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 289 (1968)).

The burden of demonstrating the absence of any genuine dispute is on the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Accordingly, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *Matsushita*, 475 U.S. at 587-88 (alteration in original) (quoting *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962)). The nonmoving party may defeat summary judgment by presenting material facts of its own, more than "[m]ere denials or conclusory statements," that indicate "an evidentiary conflict created on the record." *Barmag Barmer Maschinenfabrik AG v. Murata Mach., Ltd.*, 731 F.2d 831, 836 (Fed. Cir. 1984). To establish "that a fact cannot be or is genuinely disputed," a party must "cit[e] to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations

(including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." RCFC 56(c)(1)(A).

When both parties have moved for summary judgment, "the court must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration." *Mingus Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987). "The fact that both parties have moved for summary judgment does not mean that the court must grant judgment as a matter of law for one side or the other." *Id.* "To the extent there is a genuine issue of material fact, both motions must be denied." *Marriott Int'l Resorts, L.P. v. United States*, 586 F.3d 962, 969 (Fed. Cir. 2009).

### B.  Unity of Ownership

"'Taking' jurisprudence does not divide a single parcel into discrete segments and attempt to determine whether rights in a particular segment have been entirely abrogated." *Penn Cent. Transp. Co. v. City of New York*, 438 U.S. 104, 130 (1978). To determine the value of the property that has been taken, the court must first determine the extent of the property that existed before the taking—which has been referred to by the Supreme Court as the "denominator" property. *Keystone Bituminous Coal Ass'n v. DeBenedictis*, 480 U.S. 470, 497 (1987). "In determining the larger parcel, federal courts consider unity of use, unity of ownership (title), and physical unity (proximity or contiguity) as it relates to highest and best use." *Uniform Appraisal Standards for Federal Land Acquisitions* ("the Yellow Book") § 4.3.4. at 111 (2016). In determining what constitutes the larger or denominator property, the court must take a "flexible approach, designed to account for factual nuances." *Lovelandies Harbor, Inc. v. United States*, 28 F.3d 1171, 1181 (Fed. Cir. 1994), *abrogated on other grounds by Anaheim Gardens, L.P. v. United States,* 953 F.3d 1344 (Fed. Cir. 2020). Unity of ownership requires that "a single decision maker ha[ve] actual legal control of all property at issue." *Yellow Book* § 4.3.4.2 at 114 (emphasis omitted) (footnote omitted). The Yellow Book recommends that appraisers begin the unity of ownership analysis "with the premise that, in making a larger parcel determination, it is allowable to consider all lands that are under the beneficial control of a single individual or entity even though title is not identical in all areas of the tract(s)." *Id.* § 1.4.6 at 24. In deciding whether there is a single decision maker and whether unity of ownership exists, "fairness compels consideration of market realities." *Id.* § 4.3.4.2 at 114.

### ANALYSIS

The key question facing the court in this case is whether properties owned by three distinct LLCs—which each in turn are owned by the same two LLCs—have the same decision maker with actual legal control over those properties to satisfy the unity-of-ownership principle.[5] When applying the law of business associations, the Supreme Court has made clear that "[t]he corporate owner/employee, a natural person, is distinct from the corporation itself, a legally different entity with different rights and responsibilities due to its different legal status." *Cedric Kushner Promotions, Ltd. v. King*, 533 U.S. 158, 163 (2001). In takings jurisprudence, however, the Court has held that "a parcel of land which has been used and treated as an entity shall be so considered in assessing compensation for the taking of part or all of it." *United States v. Miller*, 317 U.S. 369, 376 (1943). What remains is how to reconcile the distinct nature of business

---

[5] The other two factors for deciding just compensation—unity of use and physical unity—are not before the court on the cross-motions.

structures with the necessity of "adopt[ing] working rules in order to do substantial justice in eminent domain proceedings." *Id.* at 375.

Jurisdictions differ on how unity of ownership should be decided where business structures are involved, and the parties and the court were unable to identify any authority directly on point from the Federal Circuit. Importantly, the Yellow Book contemplates that properties deeded differently can still be treated as one so long as all the properties are "under the beneficial control of a single individual or entity." *Yellow Book* § 1.4.6 at 24. Further, the Yellow Book points to a decision by the United States Court of Appeals for the Ninth Circuit for the principle that "fairness compels consideration of market realities." *Id.* § 4.3.4.2 at 114 (citing *United States v. 429.59 Acres of Land,* 612 F.2d. 459 (9th Cir. 1980)). The Ninth Circuit held that properties owned by three corporations—one of which was a subsidiary owned by the other two—but controlled by a single individual who acted as president, chairman of the board, and chief executive officer, satisfied the unity of ownership element because "[t]he fact that land . . . is owned by different entities does not destroy the unity concept." *429.59 Acres,* 612 F.2d at 464 (citing *Olson v. United States*, 292 U.S. 246, 256 (1934)). The Ninth Circuit found that the properties should be treated as one unit because they were ultimately under the same beneficial control of one individual. *Id.* Similarly, the Yellow Book observed that it was relevant to consider whether "the buyer in the marketplace could readily acquire both parcels from the same operative vendors." *Yellow Book* § 4.3.4.2 at 114 (internal quotations omitted) (quoting *United States v. 14.36 Acres of Land in McMullen Cty., Tex.*, 252 F. Supp. 2d 361, 363-364 (S.D. Tex. 2002) (in turn quoting Julius L. Sackman et al., *Nichols on Eminent Domain* § 14B.06[2] (rev. 3d ed. 2001))).[6]

Although both parties agree that federal law and the Yellow Book are controlling in this case, *see* Pls.' Mot. at 1; Def.'s Cross-Mot. at 12; Hr'g Tr. 16:15-20; 25:18-23, the government urges the court to consider Montana law as particularly persuasive as the properties are located in Montana, and Montana's LLC law applies to companies operating in the State regardless of where they were formed. *See* Def.'s Cross-Mot. at 13 n.2. In contrast to the Ninth Circuit, the Supreme Court of Montana has held that the unity of ownership principle cannot be satisfied between properties owned by different entities even if there is identical ownership and ultimately a single decisionmaker: "[The landowner] created the [c]orporation in order to enjoy advantages flowing from its existence as a separate entity. . . . He cannot now ask that such existence be disregarded when it works to a disadvantage to him." *Montana St. Highway Comm'n v. Robertson & Blossom, Inc.*, 441 P.2d 181, 188-189 (Mont. 1968).[7] The government also urges

---

[6] As the Yellow Book puts it, "unity of ownership does not exist when *multiple* decision makers are involved." *Yellow Book* § 4.3.4.2 at 114 (emphasis in original).

[7] Other state courts have similarly required adherence to corporate forms for unity of ownership purposes: North Carolina, *Board of Transp. v. Martin*, 249 S.E.2d 390, 396 (N.C. 1978) ("[A] parcel of land owned by an individual and an adjacent parcel of land owned by a corporation of which that individual is the sole or principal shareholder cannot be treated as a unified tract for the purpose of assessing condemnation damages."); Ohio, *City of Lorain v. Gel-Pak, Inc.*, 486 N.E.2d 836 (Ohio Ct. App. 1984) (holding that there is no unity of ownership between parcels where one is owned by a corporation and another by its shareholders); Pennsylvania, *Sams v. Redevelopment Auth. of the City of New Kensington*, 244 A.2d 779 (Pa. 1968) (refusing to pierce the corporate veil for unity of ownership purposes); Wisconsin, *Jonas v. Wisconsin*, 121 N.W.2d 235, 238-239 (Wis. 1963) (holding that the corporation and stockholders were separate entities and did not satisfy unity of ownership).

6

that plaintiffs are essentially asking the court to "reverse veil pierce" by allowing the entities to have the benefits of the corporate structure while being freed from the disadvantages. Def.'s Cross-Mot. at 14-15.

Federal law governs in takings cases, *see Miller*, 317 U.S. at 379-80, and in light of the Federal Circuit's approach to determining the denominator parcel in takings cases, *see Loveladies Harbor*, 28 F.3d at 1181, the court determines that the Ninth Circuit's rationale is more consistent with the goals and purposes of just compensation and the unity of ownership principle, particularly where the Yellow Book relies on this rationale. Where the market value of a property is the guiding principle in just compensation, *see Mississippi & Rum River Boom Co. v. Patterson*, 98 U.S. 403, 407-408 (1878), "[f]ederal courts have held that fairness compels consideration of *market realities* in determining unity of ownership." *Yellow Book* § 4.3.4.2 at 114 (emphasis added). Moreover, where the normal operations of the marketplace may make enterprise ownership more desirable, "[t]he law should not require businessmen to ignore otherwise sensible economic planning decisions in order to retain their right to full actual damages consequent upon a public taking." *Housing Auth. of City of Newark v. Norfolk Realty Co.,* 364 A.2d 1052, 1057 (N.J. 1976) (holding unity of ownership to exist between properties owned separately by a partnership and a corporation). Therefore, the fact that the properties—otherwise considered to have identical ownership and in unison—are titled to different entities does not bar a finding that unity of ownership exists.

Having established that properties titled to different entities can in some circumstances satisfy the unity of ownership element, the question remains whether plaintiffs satisfy those circumstances. It is evident from the record that it was the intent of the WSPGB entities to use the properties in conjunction with one another, s*ee* Pls.' Mot., Exs. 5, 6, 7. In light of the identicality of not only the identity of the corporate owners but the extent of their interests in each entity as well, the court finds that the WSPGB-owned properties are controlled by a single set of decisionmakers. The fact that LLCs are involved, as contrasted to a single individual as in *429.59 Acres of Land*, is not determinative so long as the decision-making power and "beneficial control" over the properties are vested in the "same operative vendors, exercising the same business judgment." *Yellow Book* §§ 1.4.6 at 24, 4.4.3.2 at 114 (quoting *14.36 Acres*, 252 F. Supp. 2d at 363-64). Here, each of the properties at issue would be subject to the same business judgment as the others because they are ultimately owned in the same way by the same parties. The unity of ownership element is thus satisfied, and the properties should be appraised as one parcel for just compensation purposes.

## CONCLUSION

For the reason that the properties have identical beneficial ownership, plaintiffs' motion for partial summary judgment as to the unity of ownership element is GRANTED, and defendant's cross-motion for partial summary judgment is DENIED.

It is so **ORDERED**.

s/ Charles F. Lettow
Charles F. Lettow
Senior Judge